IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**GWEN HAFNER,**

    **Plaintiff,**

v.                                                                        Case No.:

**BDS CONNECTED SOLUTIONS, LLC,**
a Foreign Limited Liability Company,

    **Defendant.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, **GWEN HAFNER** (hereinafter referred to as "Plaintiff" or "Ms. Hafner"), by and through her undersigned counsel, and files this, her Complaint for Damages and Demand for Relief against Defendant, **BDS CONNECTED SOLUTIONS, LLC** (hereinafter the "Defendant" or "BDS"), and in support thereof alleges the following:

## NATURE OF CLAIMS

1. Plaintiff brings this action against Defendant, for damages and all available relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII").

2. This action is to address Defendant's unlawful employment practices against Plaintiff, including sex/gender discrimination, harassment, and retaliation.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

3. This Court has jurisdiction over the Title VII claims herein pursuant to 42 U.S.C. § 2000e, as this action involves federal questions regarding deprivation of Plaintiff's civil rights.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including Defendant's unlawful employment practices alleged herein, occurred in the District.

5. Venue is proper in Florida because Defendant conducts substantial business in Florida, is registered to do business in the State of Florida, maintains a physical office in Tampa, and pays its employees, including Plaintiff, from its Hillsborough County location.

6. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) and applicable state law, as the acts of discrimination, harassment, and retaliation giving rise to this action occurred, in substantial part, while Plaintiff was employed by Defendant and performing work for Defendant in connection with its Florida operations.

7. Plaintiff worked remotely for Defendant, servicing Defendant's clients throughout the United States, and more specifically within the State of Florida. At all times material hereto, Plaintiff was subject to the jurisdiction of this Court.

8. Plaintiff timely filed a Charge of Discrimination (Charge No. 440-2025-07528) with the Equal Employment Opportunity Commission (hereinafter "EEOC"). A copy of the Charge of Discrimination is attached hereto as **Exhibit A**.

9. On or about September 16, 2025, Plaintiff received a Reasonable Cause Determination from the EEOC inviting the parties to participate in conciliation. A copy of the Determination is attached hereto as **Exhibit B**.

10. On or about December 17, 2025, Plaintiff received a Notice of Right to Sue from the EEOC. A copy of the Notice of Right to Sue is attached hereto as **Exhibit C**.

11. Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue issued by the EEOC.

12. All conditions precedent to this action have been satisfied and/or waived and jurisdiction and venue are proper in this Court.

## PARTIES

13. At all times material hereto, Plaintiff is a female citizen of the United States of America, a resident of the State of Illinois, and is protected by Title VII because:

    a. She suffered discrimination, harassment, and retaliation in violation of Title VII by the Defendant on the basis of her gender/sex; and

    b. She objected to the sex-based discrimination and harassment; and

    c. She suffered an adverse employment action based on her objections to the sex/gender-based discrimination and harassment, including being terminated for same.

14. At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of Title VII.

15. At all times material hereto, Plaintiff was responsible for working with Defendant's clients throughout the United States, and more specifically within the State of Florida.

16. At all times material hereto, Defendant is a Florida Foreign Limited Liability Company that is registered to do business in the State of Florida, including, among other places, Hillsborough County, Florida, and engages in substantial business activities throughout the State of Florida. Defendant may be served by delivering a copy of the summons and complaint upon its Registered Agent, Corporate Creations Network, Inc. at 801 US Highway 1, North Palm Beach, Florida 33408.

17. At all times material hereto, Defendant's principal place of business is located at 3802 Corporex Park Drive, Suite 225, Tampa, Florida 33619.

18. At all times material hereto, Defendant employed fifteen (15) or more employees and engaged in business within this judicial district.

## FACTUAL ALLEGATIONS

19. Plaintiff, a female employee, began her employment with Defendant on or about April 20, 2022, as a Senior Account Manager. Her title was Technology Account Lead, but her title was subsequently changed to Enterprise Business Lead after reporting sexual harassment based on her gender.

20. Plaintiff worked remotely from her residence in Illinois until her termination on or about February 13, 2025.

21. From the outset of her employment, Plaintiff consistently performed her job duties at a high level and was entrusted with major client accounts, including Meta and Microsoft, as well as high-profile experiential activations and new business initiatives.

22. Throughout her employment, Plaintiff was an excellent employee, with no significant history of attendance, performance, or disciplinary issues.

23. In or about June 2023, Plaintiff was asked to assume responsibility for Microsoft business during another employee's maternity leave.

24. With management approval, Plaintiff secured and managed business for the Microsoft Ads Team, which is something the employee on maternity leave had not accomplished.

25. In or about August 2023, Plaintiff attended a business trip with her male colleague, Matthew Mattney (Freelance Production Manager), and her female colleague, Courtney Arbour (Senior Producer), to tour a venue with a male client who worked for Plaintiff's Microsoft account.

26. During a lunch meeting attended by Plaintiff, Ms. Arbour, and the male client prior to the venue tour, the client repeatedly and openly stared at Plaintiff's breasts, despite her visible

discomfort.

27. Ms. Arbour confirmed that she witnessed the client's inappropriate behavior toward Plaintiff.

28. Later that day, Plaintiff contacted the client to inquire whether he would be attending the tour. The client responded that he would not but asked whether he could come to Plaintiff's hotel a few hours later.

29. Plaintiff denied the client's request to come to her hotel, explaining that such a late meeting would be considered "after hours," and the other parties were also not available. The client nevertheless persisted in attempting to persuade Plaintiff to allow him to come to her hotel, and Plaintiff again refused his request.

30. Shortly thereafter, Plaintiff reported her concerns regarding the sexual harassment to Defendant's female Senior Vice President, Elizabeth Jones ("Ms. Jones").

31. Ms. Jones informed Plaintiff that the client had just complained about Plaintiff.

32. After Plaintiff reported the sexual harassment to Ms. Jones, Ms. Jones discussed the matter with the client. Ms. Jones advised Plaintiff that the client "backpedaled big time and said he wasn't trying to meet her after hours or trap her in a situation."

33. On or about August 7, 2023, Plaintiff discussed the sexual harassment with Ms. Jones and Defendant's male President, Jon Margolis, who told Plaintiff "You misunderstood the situation. What you think happened did not happen," in a blatant attempt to gaslight Plaintiff and cover up the male client's harassment.

34. On or about August 10, 2023, Mr. Mattney filed a complaint with Defendant's client, Microsoft, alleging that the client had been extremely rude to him and also reporting the sexual harassment that Plaintiff endured from the client.

35. Microsoft's compliance team contacted Plaintiff, and she reported the sexual harassment to them. Microsoft stated that the behavior she endured constituted sexual harassment, and that further investigation would be conducted. Plaintiff informed Ms. Jones of this, to which Ms. Jones responded, "Ok."

36. In or about September 2023, Plaintiff learned during a training that managers were required to notify Human Resources ("HR") if an employee ever reported sexual harassment; however, Mr. Margolis and Ms. Jones failed to adhere to company policy, further demonstrating their discriminatory and retaliatory animus.

37. In or about September 2023, Plaintiff requested to be removed only from the specific Microsoft account that dealt with her harasser due to her severe discomfort in working with her harasser. Ms. Jones reluctantly agreed to this request.

38. Shortly thereafter, Ms. Jones removed Plaintiff from all Microsoft accounts, including those unrelated to Plaintiff's harasser, under the pretext that the accounts were being returned to the employee coming back from maternity leave, along with other accounts Plaintiff had been covering during that employee's absence. However, this particular Microsoft account had previously been designated to remain with Plaintiff, as she had executed a new contract and developed a client relationship independent of her harasser and independent of the employee returning from maternity leave.

39. Later that month, Defendant's male Executive Vice President, Jack Murphy, took over leadership of Plaintiff's department and set up introductory calls with all of the department employees.

40. Multiple counterparts informed Plaintiff that, despite the confidential nature of her reported sexual harassment claims, Mr. Murphy was discussing her report with her peers during

those calls. In fact, lower-level employees began randomly reaching out to Plaintiff asking about the situation with Microsoft, causing her significant distress and public humiliation.

41. In or about January 2024, Defendant replaced Plaintiff as Technology Account Lead with the employee whom she had been covering during that employee's maternity leave.

42. Plaintiff was transferred to an Enterprise Business Lead position, which was a more challenging role than her previous position. This role required Plaintiff to take on increased responsibilities, including identifying opportunities and business leads in markets that Defendant had previously pursued but had not successfully developed.

43. Plaintiff was also given unattainable goals for this new position.

44. In or about May 2024, Mr. Murphy took one of Plaintiff's major accounts, Meta, away from Plaintiff, once again assigning it to the employee whom Plaintiff had previously covered during that employee's maternity leave.

45. In or about June 2024, Defendant promoted the employee for whom Plaintiff had covered for while denying Plaintiff the opportunity for advancement.

46. Shortly thereafter, Plaintiff reported her concerns of discrimination and retaliation to Mr. Murphy and Defendant's HR / Senior Vice President of Talent, Cari Desidero.

47. Mr. Murphy met with Plaintiff and agreed that the goals provided to her were unattainable but took no action to remedy the situation.

48. Thereafter, instead of assisting Plaintiff with her new goals, Mr. Murphy and Ms. Jones routinely canceled their weekly meetings with Plaintiff, but continued their weekly meetings to assist similarly situated employees with their goals.

49. On or about February 13, 2025, Ms. Jones and Ms. Desidero abruptly terminated Plaintiff's employment under the pretext of "company restructuring."

50. Only one other female employee was also terminated, no male employees were terminated, and there was no legitimate reason to terminate Plaintiff. This action does not appear to constitute a "restructuring" but rather was motivated by gender/sex.

51. Plaintiff consistently managed a heavy workload with multiple high-value contracts in process and performed her job duties at a high level. She was entrusted with major client accounts, including Meta and Microsoft, as well as high-profile experiential activations and new business initiatives. Plaintiff was also asked to assume additional responsibilities to cover an employee's maternity leave. However, after engaging in protected activity, she was singled out for "restructuring" despite her strong work performance.

52. Defendant did not have a legitimate, non-discriminatory, non-retaliatory reason for its adverse employment actions against Plaintiff.

53. Any reason provided by Defendant for its adverse employment actions against Plaintiff is pretext and a cover-up for illegal discrimination, harassment, and retaliation.

54. Plaintiff is a member of a protected class.

55. There is a close temporal proximity/nexus between Plaintiff asserting her complaints as to discrimination, harassment, and retaliation, and Plaintiff's adverse employment actions, including but not limited to her termination.

56. Plaintiff's sex/gender was a motivating factor in her adverse employment actions, including but not limited to her termination.

57. Defendant's failure to provide any purported metrics for how it selected Plaintiff as part of its "restructuring" combined with the temporal proximity of her protected activity, demotion, removal of accounts, and ultimate termination demonstrate Defendant's discriminatory and retaliatory animus.

58. Plaintiff was subjected to discrimination, harassment, and retaliation under Title VII based on her sex/gender.

59. Plaintiff was treated in a disparate manner from her non-female counterparts.

60. Plaintiff engaged in "protected activity" under Title VII.

61. Plaintiff suffered adverse actions based on her sex/gender under Title VII, including, but not limited to, being removed from major accounts, transferring her to less favorable positions and/or assignments, assigning her unattainable performance goals, denying her promotion, openly discussing her confidential complaint of sexual harassment with staff, and discharging her from her employment.

62. The EEOC found reasonable cause that Defendant discriminated against Plaintiff based on her sex/gender in violation of Title VII.

63. The EEOC found reasonable cause that Defendant discriminated against Plaintiff based on her sex/gender in retaliation for engaging in a protected activity by removing her from major accounts, transferring her to less favorable positions and/or assignments, assigning her unattainable performance goals, denying her promotion, openly discussing her confidential complaint of sexual harassment with staff, and discharging her from employment in violation of Title VII.

64. Plaintiff has suffered damages as a result of Defendant's illegal conduct towards her.

65. Plaintiff has retained the law firm of FARAH AND FARAH P.A. to represent her in the litigation and has agreed to pay the firm a reasonable fee for its services.

### COUNT I: DISCRIMINATION IN VIOLATION OF TITLE VII BASED ON SEX/GENDER

66. Plaintiff realleges and incorporates paragraphs 1 through 65 as if fully set forth

herein.

67. Defendant is a covered employer with more than fifteen (15) employees.

68. Plaintiff is a member of a protected class based on her gender.

69. Plaintiff is a female employee who was qualified for her position and performed her job satisfactorily throughout her employment.

70. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against sex/gender discrimination under Title VII.

71. Plaintiff was subjected to discrimination and disparate treatment based on her sex/gender after she reported sexual harassment and was identified as the complainant in a workplace investigation.

72. Defendant treated other employees outside of Plaintiff's protected class differently.

73. Defendant failed to adequately protect Plaintiff from adverse consequences resulting from her complaint and failed to follow required protocols, including maintaining confidentiality.

74. Following Plaintiff's complaint, Defendant treated her less favorably and her employment was adversely affected by:

    a. Removing her from key client accounts and leadership responsibilities;

    b. Reassigning her to less favorable roles;

    c. Imposing unreasonable and unattainable performance expectations; and

    d. Terminating her employment.

75. Defendant's adverse actions against Plaintiff are directly linked and motivated by Plaintiff's gender.

76. Defendant's discriminatory actions were egregious and provide evidence of its

discriminatory motive to discriminate against Plaintiff.

77. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional distress, humiliation, inconvenience, mental anguish, reputational harm, loss of enjoyment of life, and other non-pecuniary losses.

78. Defendant was fully aware of the discrimination against Plaintiff and, by failing to take corrective action, participated in and ratified the discriminatory conduct.

79. Plaintiff has suffered damages as a result of Defendant's illegal conduct toward her.

80. The conduct of Defendant was so willful, wanton, and in reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

81. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

82. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant, which have caused, and continue to cause, irreparable harm.

**WHEREFORE,** Plaintiff demands trial by jury, reinstatement and/or reemployment, back pay, lost wages, front pay if reinstatement or reemployment is not feasible, compensatory damages, punitive damages, attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

## COUNT II: RETALIATION IN VIOLATION OF TITLE VII

83. Plaintiff realleges and incorporates paragraphs 1 through 65 as if fully set forth herein.

84. Plaintiff engaged in protected activity when she reported sexual harassment based

on her sex/gender.

85. Plaintiff also engaged in protected activity when she reported adverse employment actions she was enduring.

86. Plaintiff's complaints constitute protected activity.

87. Defendant was aware of Plaintiff's protected activity.

88. After reporting gender discrimination and harassment, Plaintiff was subjected to several material adverse employment actions, including but not limited to (i) being removed from key client accounts, (ii) being reassigned less favorable roles, (iii) being imposed with unreasonable and unattainable performance goals and expectations; and (iv) being terminated.

89. The temporal proximity between Plaintiff's protected activity and Defendant's adverse actions, combined with her strong performance history and revenue generation, establishes a causal connection between the protected activity and the adverse employment actions.

90. Plaintiff was terminated as a direct result of her complaints of conduct she reasonably believed constituted sex/gender discrimination.

91. Defendant's stated reasons for its actions and Plaintiff's termination were pretextual and intended to punish Plaintiff for engaging in protected activity.

92. The conduct of Defendant and its agents and employees proximately, directly, and foreseeably injured Plaintiff, including, but not limited to, lost wages and benefits, future pecuniary losses, emotional distress, pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

93. The acts of Defendant, by and through its agents and employees, violated Plaintiff's rights against retaliation for opposing sex/gender discrimination under Title VII.

94. Defendant retaliated against Plaintiff because of her opposition to what she

reasonably believed to be unlawful sex/gender discrimination.

95. The conduct of Defendant was so willful and wanton, and in such reckless disregard of the statutory rights of Plaintiff, as to entitle her to an award of punitive damages against Defendant, to deter it and others from such conduct in the future.

96. Plaintiff has no plain, adequate, or complete remedy at law for the actions of Defendant, which have caused and continue to cause irreparable harm.

97. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to Title VII.

**WHEREFORE,** Plaintiff demands trial by jury and requests judgment in her favor and against Defendant for back pay, front pay, lost benefits, compensatory damages for emotional distress, punitive damages, attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 13th day of **March 2026**.

By: *__Alison Breiter__*
Alison Breiter, Esquire
Florida Bar No. 1003413
FARAH AND FARAH, P.A.
5100 W Kennedy Blvd, Suite 250
Tampa, FL 33609
Telephone: 813-666-1179
Facsimile: 813-522-3992
Email: abreiter@farahandfarah.com
E-mail: murban@farahandfarah.com
*Trial Counsel for Plaintiff*